UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

TAMMY B.,[1]

                                    Plaintiff,              Case # 20-cv-00044-FPG

v.                                                          DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                                    Defendant.

## INTRODUCTION

On July 25, 2013, Plaintiff Tammy B. protectively applied for Disability Insurance Benefits under Title II of the Social Security Act (the "Act") and Supplemental Security Income under Title XVI of the Act.  Tr.[2] 120.  The Social Security Administration (the "SSA") denied her claim, and Plaintiff appeared at a hearing before Administrative Law Judge Bryce Baird on February 19, 2016.  *See* Tr. 194.  ALJ Baird issued an unfavorable decision on October 5, 2016.  Tr. 137-52.

On December 2, 2016, Plaintiff requested review of the ALJ's decision.  The Appeals Counsel granted Plaintiff's request and remanded her case for rehearing on December 5, 2017.  Tr. 160-62.  The Appeals Counsel specifically directed the ALJ to:  (1) consider the Plaintiff's obesity; (2) evaluate Plaintiff's mental impairments in accordance with the technique described in 20 C.F.R. 404.1520a and 416.920a; (3) give further consideration to Plaintiff's residual functional capacity during the period at issue and provide rationale with reference to evidence in the record; and (4) if warranted, obtain supplemental evidence from a vocational expert.  *Id.*

---

[1] In order to better protect personal and medical information of non-governmental parties, this Decision and Order will identify the plaintiff using only her first name and last initial in accordance with this Court's Standing Order issued November 18, 2020.

[2] "Tr." refers to the administrative record in this matter.  ECF Nos. 6, 7.

ALJ Baird held a second hearing concerning Plaintiff's disability benefits on June 28, 2018. At the hearing, Plaintiff and vocational expert, Dawn M. Blythe, testified. On November 13, 2018, the ALJ issued an unfavorable decision. Tr. 74-87. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the SSA. Tr. 1-3. Plaintiff then appealed to this Court.[3] ECF No. 1.

The parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 9, 10. For the reasons that follow, Plaintiff's motion is DENIED, the Commissioner's motion is GRANTED, and the ALJ's decision is AFFIRMED.

## LEGAL STANDARD

### I.      District Court Review

When it reviews a final decision of the SSA, it is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Rather, the Court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. §§ 405(g), 1383(c)(3)) (other citation omitted). The Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted).

### II.      Disability Determination

To determine whether a claimant is disabled within the meaning of the Act, an ALJ follows a five-step sequential evaluation: the ALJ must determine (1) whether the claimant is engaged in

---

[3] The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c)(3).

substantial gainful work activity; (2) whether the claimant has any "severe" impairments that significantly restrict his or her ability to work; (3) whether the claimant's impairments meet or medically equal the criteria of any listed impairments in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and if they do not, what the claimant's residual functional capacity ("RFC") is; (4) whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work; and (5) whether the claimant's RFC permits him or her to perform alternative substantial gainful work which exists in the national economy in light of her age, education, and work experience. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986); *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999); *see also* 20 C.F.R. §§ 404.1520; 416.920(a).

## DISCUSSION

### I.    The ALJ's Decision

The ALJ analyzed Plaintiff's claim for benefits using the process described above.  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 1, 2013, the alleged onset date.  Tr. 77.  At step two, the ALJ found that Plaintiff has the following severe impairments: lumbar disc bulges, depression, anxiety, carpal tunnel syndrome, and obesity.  *Id.* The ALJ also found that Plaintiff's asthma was a non-severe impairment because it was exacerbated by Plaintiff's smoking habit and Plaintiff did not claim it was a severe impairment. *Id.*  The ALJ also noted that Plaintiff alleged she suffers from a learning disability.  Tr. 78.  At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meet or medically equal the severity of one of the listed impairments.  *Id.*

The ALJ determined that Plaintiff maintained the RFC to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a).  Tr. 80.  However, the ALJ determined that Plaintiff was limited to: lifting and carrying 10 pounds occasionally and five pounds frequently;

sitting six hours in an eight-hour work day and standing or walking two hours in an eight-hour work day; and working with a sit stand option that would allow her to sit for up to five minutes after 20 minutes of standing or walking; stand or stretch for up to one minute after 30 minutes of sitting, during which, she would be off task.  *Id.*  Plaintiff was further limited to: occasional climbing of ramps or stairs; no climbing of ladders, ropes, or scaffolds; occasionally balancing, stooping, crouching, or kneeling; no crawling; frequent fine and gross manipulation with bilateral upper extremities; no exposure to excessive cold, moisture, or humidity; simple routine tasks; no travel to unfamiliar places; no work requiring the development of independent work strategies or identifying workplace needs; occasional interaction with the public and co-workers; and no teamwork.  *Id.*  Plaintiff was also limited to work that involved the same task everyday with little variation in location or hours.  *Id.*

In formulating the RFC, the ALJ applied partial weight to the opinion of consultative examining physician Nikita Dave, M.D., who noted that Plaintiff should avoid respiratory irritants and extremes of hot and cold and opined that Plaintiff had moderate limitations for prolonged sitting, leaning, standing, repetitive bending, lifting, carrying, and pushing and pulling of heavy objects.  Tr. 84.  Specifically, the ALJ applied little weight to the portion of Dr. Dave's opinion concerning respiratory irritants and significant weight to the portion of the opinion concerning exertional limitations.  *Id.*  The ALJ applied little weight to the January 26, 2016 narrative from Kate Madden, PA-C, which stated that Plaintiff's impairments caused limitations in daily tasks including difficulty getting in and out of bed, walking upstairs, lifting, pushing, and pulling, as he found the opinion too vague.  In particular, the ALJ found that the opinion did not provide specific limitations and was inconsistent with the treatment records which showed only mild abnormalities.

*Id.*  The ALJ also applied little weight to the opinion of Elizabeth Gattman, NP-C, because it was not supported by objective findings in the record and was also determined to be vague.  *Id.*

Great weight was applied to the orthopedic report dated February 15, 2014, which noted that Plaintiff could lift, carry, push, or pull up to ten pounds; was able to perform some walking, climbing, standing, and sitting; but should avoid bending or stooping.  Tr. 85.  The opinion was deemed consistent with the record and provided specific functional limitations.  *Id.*  Some weight was also applied to the February 29, 2016 functional capacity assessment by Rachel Golombesk, MS, OTR/L, which indicated that Plaintiff could perform sedentary activities and lift a maximum of ten pounds.  *Id.*  Though, the ALJ determined that the grip weakness evaluation in the record appeared to be exaggerated as the treatment records did not contain evidence of such an impairment.  *Id.*  Partial weight was also assigned to the opinion of Dr. Ippolito, PsyD, who, by reviewing Plaintiff's record and examining Plaintiff, determined that Plaintiff was able to understand, remember or apply simple and complex directions and instructions; sustain concentration and perform a task at a consistent pace with mild limitations; interact adequately with supervisors, co-workers, and the public; regulate emotions; control behavior; and maintain well-being with moderate limitations.  *Id.*

At steps four and five, the ALJ concluded that there were jobs that existed in the economy that Plaintiff could perform including, for example, an Addresser or a Document Preparer.  Tr. 87.  As such, the ALJ found that Plaintiff was not disabled.

## II.    Analysis

Plaintiff takes issue with the ALJ's decision on the basis that the decision was not supported by substantial evidence.  Specifically, Plaintiff argues that the decision: (1) fails to assess the opinion of mental health counselor, Kellie Sims, LMHC; (2) the opinions of Nikita Dave, M.D.,

and Alex Selioutski, M.D., do not provide substantial support for the RFC finding; and (3) the limitation to frequent fine and gross manipulation with bilateral upper extremities was unsupported by substantial evidence.  Plaintiff also argues that the evidence shows that the frequency of the medical treatment would render her unable to maintain minimal standards of attendance and that she is illiterate within the meaning of the Social Security Regulations.  For the reasons set forth below, the Court disagrees.

### A.  The Opinion of Kellie Sims, LMHC

First, Plaintiff asserts that the ALJ's failure to assess the opinion from Kellie Sims, LMHC was legal error and requires reversal and remand.  *See* ECF No. 9-1 at 20-22.  Specifically, Plaintiff argues that the opinion of Sims contradicts the RFC finding because Sims opined that Plaintiff was moderately limited in understanding, remembering, and carrying out instructions, maintaining attention/concentration, and in appearing able to function in a work setting, which, Plaintiff asserts, demonstrates that she is unable to perform basic demands of unskilled work.  *Id.* at 21-22.  Further, Plaintiff relies on the testimony of the vocational expert who stated that if an individual had an inability to sustain attention and concentration for two-hour periods during the workday, she would be unemployable.  Tr. 63.

However, Sims' opinion is not "significantly more favorable to [Plaintiff] than the evidence considered" by the ALJ such that remand is necessary on this ground.  *See Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010) (citing *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999); *Schaal v. Apfel*, 134 F.3d 496, 504-05 (2d Cir. 1998); *Johnson v. Bowen*, 817 F.2d 983, 986-87 (2d Cir. 1987)).  While Sims opined that Plaintiff had moderate limitations in understanding and remembering instructions, carrying out instructions, and maintaining attention and concentration, Tr. 828, no where in the opinion does Sims opine that such limitations would render Plaintiff

unable to sustain concentration for two-hour periods or prevent her from performing any form of work. Indeed, it is well established that an RFC for unskilled work is not inconsistent with such moderate mental impairments. *See Zabala*, 595 F.3d at 410; *see also Saxon v. Colvin*, No. 13-CV-165, 2015 WL 3937206, at *6 (W.D.N.Y. June 26, 2015) (limiting plaintiff to simple routine tasks in a low stress, low contact environment was consistent with plaintiff's mental limitations including moderate impairment in learning tasks, performing complex tasks, making appropriate decisions, relating with others, and dealing with stress); *Martinez v. Comm'r of Soc. Sec.*, No. 3:16-CV-0908, 2017 WL 2633532, at *7 (N.D.N.Y. June 15, 2017) ("[T]he ALJ's RFC determination for unskilled work is not inconsistent with moderate limitations in mental functioning.").[4]

Moreover, Dr. Ippolito noted in both her 2013 and 2018 opinions that Plaintiff was able to, *inter alia*, understand, remember, or apply simple and complex directions and instructions; sustain ordinary routine and regular attendance; sustain concentration and perform tasks at a consistent pace with only mild limitations; and interact with others with only moderate limitations. Tr. 729-30; 1163. Thus, remand is not required on this ground.

### B. The Opinions of Nikita Dave, M.D. and Alex Selioutski, M.D.

Plaintiff next contends that the opinions of Dr. Dave and Dr. Selioutski do not constitute substantial support for the RFC finding as Dr. Dave's opinion was too outdated and the RFC did not adequately reflect the limitations noted by Dr. Selioutski. *See* ECF No. 9-1 at 23-25. The

---

[4] Plaintiff argues that *Martinez* is contrary to the circumstances here because there, the ALJ analyzed the weight afforded to each opinion and cited specific evidence, and here, the ALJ did not do so. ECF No. 11 at 4. While it is true that in *Martinez* the court indicated that the ALJ thoroughly discussed the medical opinions, 2017 WL 2633532 at *7, an ALJ does not need to "recite every piece of evidence that contributed" to a decision, so long as a rationale of the ALJ's decision is discernable from the record. *Yeomas v. Berryhill*, 305 F. Supp. 3d 464, 467 (W.D.N.Y. 2018) (internal quotations and citations omitted). Because the ALJ's RFC finding is not wholly contrary to Sims' opinion, it is clear the ALJ considered various reports and records relating to Plaintiff's mental status. *See, e.g.*, Tr. 79 (citing to Exhibit 12F, 58F, and 35F, in support of the mental limitations findings); *see also* Tr. 81 (discussing Plaintiff's own testimony in determining Plaintiff's mental impairments).

Court does not agree.

As an initial matter, while Plaintiff argues that Dr. Dave's opinion was stale because of the age of the opinion and Plaintiff's subsequent treatments, including spinal surgery and carpal tunnel surgery, Plaintiff failed to point this Court to anything in the record demonstrating that Plaintiff's conditions significantly deteriorated after such surgery.  While it is true that "[a] medical opinion may be stale if it does not account for the [plaintiff's] deteriorating condition," *Carney v. Berryhill*, No. 16-CV-269-FPG, 2017 WL 2021529, at *6 (W.D.N.Y. May 12, 2017), "a medical opinion is not necessarily stale simply based on its age." *Biro v. Comm'r of Soc. Sec.*, 335 F. Supp. 3d 464, 470 (W.D.N.Y. 2018).  In fact, a dated opinion "may constitute substantial evidence if it is consistent with the record as a whole." *Id.* (citing *Andrews v. Berryhill*, No. 17-CV-6368 (MAT), 2018 WL 2088064, at *3 (W.D.N.Y. May 4, 2018) (no error where an ALJ relied on dated opinions where there was no indication in plaintiff's records that his condition had significantly deteriorated)); *but see Pagano v. Comm'r of Soc. Sec.*, No. 16-CV-6537-FPG, 2017 WL 4276653, at *5 (W.D.N.Y. Sept. 27, 2017) (opinion rendered before surgery did not adequately account for plaintiff's deteriorating condition and was not substantial evidence to support the ALJ's finding). Here, the medical records available, including those which post-date Plaintiff's surgery, do not contradict the RFC determination that Plaintiff remains capable of unskilled, sedentary work.  *See, e.g.*, Tr. 1172; 1180; 1573; 1658.  Rather, they are consistent with the RFC determination that Plaintiff has the ability to perform sedentary work with various, additional limitations.

Next, Plaintiff argues that there is a "clear discrepancy" between Dr. Dave's and Dr. Selioutski's opinions and the RFC finding concerning Plaintiff's ability to sit and stand. Specifically, Plaintiff questions how the ALJ determined that "some limit" in standing and walking translated to a finding that Plaintiff could sit for six hours in an eight-hour day and stand or walk

for up to two hours in an eight-hour day.  *See* ECF No. 9-1 at 24.  Courts in this circuit have recognized that "[i]t is not obvious that a 'moderate' limitation on sitting translates into a set number of hours," and have therefore determined that an ALJ cannot rely on opinions that use terms such as "moderate" in describing physical limitations, absent additional information. *Perozzi v. Berryhill*, 287 F. Supp. 3d 471, 487 (S.D.N.Y. 2018) (collecting cases).  However, the ALJ had the requisite additional medical evidence to support the decision here.  *See, e.g.*, Tr. 1180; 1269; 1272.

Moreover, even setting aside the opinion evidence, an ALJ's RFC determination need not be supported by a specific medical opinion, particularly where the plaintiff has failed to adduce evidence inconsistent with the ALJ's RFC determination.  *See, e.g.*, *Cook v. Comm'r of Soc. Sec.*, 818 F. App'x 108, 109-10 (2d Cir. 2020) (summary order) (finding that, "although there was no medical opinion providing the specific restrictions reflected in the ALJ's RFC determination," that determination was support by substantial evidence because treatment notes were "in line" with the determination and the plaintiff "failed to adduce any medical evidence inconsistent with the ALJ's determinations"); *see also Pellam v. Astrue*, 508 F. App'x 87, 90-91 (2d Cir. 2013) (summary order) (upholding an ALJ's RFC determination where the ALJ "rejected" a consultative examiner's opinion but the "opinion largely supported the ALJ's assessment of" claimant's RFC and the RFC was supported by the treatment notes of claimant's doctors).  Plaintiff does not point to any specific evidence in the record to demonstrate that there are in fact inconsistencies with the RFC limitation concerning Plaintiff's sitting and standing limitations.  Therefore, this is again not a basis upon which remand is warranted.

### C.  Fine and Gross Manipulation with Upper Extremities

Next, Plaintiff contends that remand is required because the ALJ's finding that Plaintiff

can do "frequent fine and gross manipulation with the bilateral upper extremities" is unsupported by the record, as the evidence demonstrates that her impairments are more severe. ECF No. 9-1 at 26-28. Specifically, because evidence such as the February 2016 Functional Capacity Evaluation, Tr. 1115-17, the April 2016 medical report, Tr. 1443, as well as the March 2018 opinion of N.P. Gattman, Tr. 1169, demonstrate that Plaintiff's abilities are more limited. *Id.* In response, the Commissioner points to various evidence which further supports the ALJ's determination. *See* ECF No. 10-1 at 25.

Plaintiff's argument is not well supported. Indeed, the record Plaintiff cites in support of her argument indicate that she was capable of simple grasping, fine work, high speed assembly, low speed assembly, and feeling, in both her right and left hands. Tr. 1116. The same record further notes that Plaintiff indeed had moderate impairments, based on the low Pegtest scores and numbness/tingling in her hands, but nevertheless indicated that Plaintiff was capable of the various functions as discussed. *Id.* Similarly, N.P. Gattman opined that Plaintiff was only moderately limited in her hand functions. Tr. 1169. It is not inconsistent with such records for the ALJ to therefore conclude that Plaintiff was capable of frequent fine and gross manipulation. *See, e.g.*, *Rodriguez v. Barnhart*, No. 01 Civ. 7373, 2002 WL 31307167, at *5 (S.D.N.Y. Oct. 15, 2002) (affirming an ALJ's decision where plaintiff was capable of sedentary work limited further by plaintiff's moderate limitations for handing objects).

Moreover, it is "Plaintiff's burden to prove a more restrictive RFC than the RFC assessed by the ALJ." *Beaman v. Comm'r of Soc. Sec.*, No. 18-CV-1344, 2020 WL 473618, at *6 (W.D.N.Y. Jan. 28, 2020); *see Cook*, 818 F. App'x at 109-10. The records on which Plaintiff's relies fail to meet that burden here.

### D.  Minimal Standards of Attendance

Plaintiff additionally claims that she could not have "worked on a 'regular and continuing basis' during the period under review" and the ALJ overlooked this factor in determining that she would in fact be able to work.  ECF No. 9-1 at 25-26.  Specifically, Plaintiff claims that, during the relevant time period, Plaintiff attended treatment a total of 184 days, which she contends averages approximately three days per month of appointments.  *Id.*  The Commissioner asserts that such an argument is merely speculative because it does not consider attending doctors' appointments before or after work, during a lunch break, or on weekends.  ECF No. 10-1 at 25.  Moreover, the Commissioner notes that Plaintiff provided no evidence of any medical provider that assigned her off-task or attendance limitations due to her treatment requirements.  *Id.*

Contrary to Plaintiff's position, attending treatment for a total of 184 days during the relevant time period does not indicate that she would have to miss that many full days of work.  The record does not indicate, for example, that office visits would take an entire day, nor does the record indicate that no appointment times were available during non-workdays or hours.  While the vocational expert testified that no more than one day per month of missed work would be tolerated before a termination is expected, Tr. 63, Plaintiff cannot point to anything in the record to demonstrate even that would be necessary under her treatment regimen.  *See Robbins v. Saul*, No. 18-CV-6592, 2020 WL 1445854, at *4 (W.D.N.Y. Mar. 25, 2020) (although Plaintiff attended approximately fifty notable medical events during a less than two month period, that did not indicate that she missed, or would be required to miss, that many full days of work during the same period) (collecting cases).  Thus, this is not a ground upon which remand is necessary.

### E.  Plaintiff's Literacy

Lastly, Plaintiff asserts that the ALJ failed to properly develop the record concerning her

ability to read and write.  ECF No. 9-1 at 29-30.  Specifically, because the occupations provided by the vocational expert require aptitude ability within the middle 1/3 of the population, Plaintiff claims that the ALJ needed to analyze Plaintiff's literacy.  *Id.*  In response, the Commissioner asserts that the evidence demonstrated that Plaintiff could read and write and therefore, the ALJ did not need to account for the limitation in the hypotheticals presented to the vocational expert. ECF No. 10-1 at 26-27.

Illiteracy is defined in the Social Security regulations as the inability of a person to "read or write a simple message such as instructions or inventory lists even though the person can sign his or her name."  20 C.F.R. §§ 404.1564(b)(1); 416.964(b)(1).  Depending on a plaintiff's age, other impairments, and past work experience, illiteracy may render a plaintiff disabled.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2.  However, Plaintiff did not assert that she was illiterate in her disability application.  Rather, Plaintiff asserted that she was able to read and understand English, write more than her name in English, but claimed that had a learning disability.  Tr. 339-41.  Here, the ALJ recognized that Plaintiff claimed to have a learning disability and noted that although a 1999 report indicated Plaintiff's skills were behind those expected for her age, a 2013 evaluation did not result in a diagnosis of any learning disorder.  *See* Tr. 727-31.

Moreover, while Plaintiff's IQ score was fairly low—full scale IQ was determined to be an 82—she had "relative strength on a task processing speed and attention/concentration," falling within the average range of her peers.  Tr. 1162.  That, in conjunction with Plaintiff's education through the tenth grade, work history as a cook, laborer, sales associate, and grocery store shift manager, Tr. 341, demonstrate that Plaintiff is indeed able to perform simple task jobs such as that set forth in the ALJ's decision.  *See* SSR 16-3p (an ALJ may consider a plaintiff's statements in evaluating symptoms).  Plaintiff points to no evidence to the contrary.  *See Cook*, 818 F. App'x at

109-10.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings, ECF No. 9, is DENIED, the Commissioner's motion for judgment on the pleadings, ECF No. 10, is GRANTED, and the complaint is DISMISSED WITH PREJUDICE.  The Clerk of Court shall enter judgment and close this case.

IT IS SO ORDERED.

Dated: May 27, 2021
       Rochester, New York

HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court